# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM J. TUMA, doing business as, TUMA AND ASSOCIATES<br><br>Plaintiff,<br>v.<br>EATON CORPORATION,<br><br>Defendant. | Case No. 08CV792-BTM (CAB)<br><br>**ORDER RE MOTION FOR RECONSIDERATION** |

Plaintiff moves for reconsideration of the Court's May 23, 2011 order granting partial summary judgment to Defendant. One of the grounds raised in Plaintiff's motion is that the Court should have granted Plaintiff's request for oral argument. Plaintiff is correct that a party opposing summary judgment is entitled to oral argument, upon request, if the summary judgment motion is granted. *Jasinski v. Showboat Operating Co.*, 644 F.2d 1277, 1280 (9th Cir. 1981). Accordingly, the Court heard oral argument on the motion for reconsideration and reviews the motion for summary judgment *de novo*. Having conducted a *de novo* review of the motion papers and the relevant record, the Court **REAFFIRMS** the May 23, 2011 summary judgment order, but modifies some of the supporting reasoning, as set forth below.

## I.  DISCUSSION

**A.  <u>Procuring Cause Doctrine</u>**

In the Court's summary judgment order, the Court held that the procuring cause doctrine was inapplicable because the contract to which Plaintiff is a "procuring cause" is a pricing agreement, upon which commissions would not be owed under the operative contract.  Order at 6 n.3  At oral argument for the motion for reconsideration, Defendant stated that the first order on the Watkins Agreement was placed one month after it was signed (approximately four and a half months after the effective date of Plaintiff's termination) and that had Plaintiff not been terminated, Plaintiff would have received an apportioned commission on that order pursuant to Section 9(c) of the contract.  Under the premise that Plaintiff is seeking commissions on that first order (as well as subsequent ones), as opposed to a commission for the Watkins Agreement, the Court now addresses Plaintiff's procuring cause doctrine arguments.

Plaintiff points to evidence that he contends shows that he worked for four years before finally convincing Watkins to consider switching to Defendant's products and that both Watkins and Defendant recognized the role Plaintiff played in setting up their business arrangement.  *See* Pl. Statement of Facts 22-31, 37, 43.  The Court assumes that such evidence is sufficient to demonstrate a disputed factual issue as to whether Plaintiff was the procuring cause, under California law, of the first order placed under the Watkins Agreement.  *See Rose v. Hunter*, 155 Cal. App. 2d 319, 323 (1st Dist. 1957) ("Procuring cause has been defined as the cause originating a series of events that, without break in their continuity, result in the accomplishment of the prime object of the employment.") (quotations and citation omitted).

Nevertheless, the procuring cause doctrine does not provide a basis for Plaintiff to recover commissions in this case.  For this theory to apply, the governing contract must either provide that a commission is earned by "procuring" a sale or not contain contrary

provisions. *See Zinn v. Ex-Cell-O Corp.*, 149 P.2d 177, 180-181 (1944); *Drumm v. Morningstar, Inc.*, NO. C08-3362 THE, 2009 U.S. Dist. LEXIS 94358, at *2-5 (N.D. Cal. Oct. 8, 2009) (noting lack of support for proposition that "the procuring cause theory may be relied on to circumvent written contractual conditions"); *Schuman v. Ikon Office Solutions, Inc.*, 232 Fed. Appx. 659, 662 (9th Cir. Cal. 2007) (procuring cause doctrine cannot be used "to contradict the express provisions of the Plan").

Here, the parties did not provide for accrual of commissions where Plaintiff is the procuring cause of orders placed after termination. Instead, unambiguous contract language provides that commissions are owed only upon the final acts of sales that occur prior to thirty days after the effective date of termination. Where commissions have not accrued as of the time of a contractual post-termination cut-off date, the procuring cause doctrine cannot be used to effectively rewrite the contract to allow a salesperson to recover post-termination commissions. *See Drumm*, 2009 U.S. Dist. LEXIS 94358, at *2-5.

## B. Prevention/Bad Faith Termination

Plaintiff also asserts that he can recover commissions on the Watkins Agreement under the theories of prevention of performance and the implied covenant of good faith. Plaintiff asserts that because he was not paid a salary or expenses and cost Defendant nothing other than commissions that he had earned, a reasonable jury could conclude that Plaintiff was fired for the purpose of depriving him of commissions on future orders placed by Watkins. The Court assumes that such circumstantial evidence is sufficient to create a disputed factual issue of whether he was terminated in bad faith. Nevertheless, as a matter of law, Plaintiff cannot recover commissions because of the unambiguous terms of his contract.

As an initial matter, contrary to Plaintiff's position, the mere termination of an at-will employee and the denial of commission payments after his termination does not

provide Plaintiff with a basis of recovery under either the prevention doctrine or the implied covenant of good faith. *See Drumm*, 2009 U.S. Dist. LEXIS 94358, at * 9 (quoting *Kline v. Johnson*, 121 Cal. App. 2d Supp. 851 (Cal. App. Dep't Super. Ct. 1953)) ("[T]he prevention doctrine is inapplicable where 'the preventing action is allowed under the contract.'"); *Nein v. HostPro, Inc.*, 174 Cal. App. 4th 833, 852 (2d Dist. 2009) ("Because the express terms of the agreement thus permitted defendant to deny plaintiff further commissions after his termination, doing so cannot violate the implied covenant."). However, neither of these cases – nor any other case cited by the parties or uncovered in the Court's research – squarely addresses whether, under California law, a salesperson, who is terminated in bad faith, may recover commissions on post-termination sales when recovery contradicts the express terms of an employment contract that is neither unconscionable nor illegal.[1] Accordingly, it is the Court's task to best predict how the California Supreme Court would resolve this issue. *See Giles v. GMAC*, 494 F.3d 865, 872 (9th Cir. 2007).

The Ninth Circuit has twice addressed this issue under the laws of other states and once certified it to the Washington Supreme Court. *See Balzer/Wolf Associates, Inc. v. Parlex Corp.*, 753 F.2d 771, 774-775 (9th Cir. 1985); *Hendry v. Exide Elec. Corp*., Nos. 90-15964, 90-16148, 1992 U.S. App. LEXIS 21804, 21-22 (9th Cir. Sept. 8, 1992); *Willis v. Champlain Cable Corp.*, 842 F.2d 1139, 1140 (9th Cir. 1988). All three of these decisions deny recovery of commissions, in situations substantially similar to the case at bar.

In *Balzer/Wolf*, the plaintiff entered into a sales representative agreement that provided for commission payments on sales made pursuant to the contract. *Balzer/Wolf*

---

[1] As noted in the summary judgment order, the California Supreme Court has stated in dicta that "the covenant might be violated if termination of an at-will employee was a mere pretext to cheat the worker out of another contract benefit to which the employee was clearly entitled, such as compensation already earned." *Guz v. Bechtel National, Inc.*, 24 Cal. 4th 317, 353 n.18 (2000). However, the California Supreme Court has not addressed the situation presented in the instant case: when an express provision of the contract authorizes termination of an employee prior to payment of commissions for future orders that he is arguably a procuring cause.

*Associates, Inc.*, 753 F.2d at 771-772. The agreement could be terminated without cause and provided that in the event of termination, commissions on orders accepted by the defendant prior to termination but delivered thereafter, would be paid pursuant to a schedule set forth in the contract. *Id.* at 772. The plaintiff alleged that the agreement was terminated in order to avoid paying commissions on orders placed after termination and sought recovery on this basis. *Id.*

The Ninth Circuit, interpreting Massachusetts law, did not find the defendant's motivation in terminating the agreement to be material to whether the plaintiff was entitled to extra-contractual post-termination commissions. *See id.* at 774. The Ninth Circuit held:

> [W]ithout regard to whether Massachusetts law implies a covenant of good faith and fair dealing in contracts other than employment, . . . the contract unambiguously provides for the contingency that gives rise to this case and that, in the absence of unconscionability or illegality, Massachusetts law requires the enforcement of the contract as written.

*Id.* The court's reasoning fully applies here:

> The bargain as struck should be enforced. Only by doing so can we be certain that the balance of advantages and disadvantages struck by each party in the bargain they reached is implemented. Not to implement this balance would deprive the parties of their bargain and impair their freedom to contract as they wish.
>
> Bargains, of course, sometimes rest on assumptions about the future that prove to be fundamentally incorrect. In those instances relief derived from principles not imbedded in the language of the contract, such as impossibility of performance, commercial frustration, or implied covenants, is available. In effect, Balzer/Wolf insists this is such a case. We disagree. While it cannot be said that the parties foresaw the Hughes Aircraft orders, it is clear they foresaw the type of situation of which the Hughes Aircraft orders is an example. Perfect foresight is not required to assure enforcement of the written word. A general provision which deals with the type of situation which does in fact occur should be enough. Clearly and unambiguously the parties here agreed to that much.

*Id.* at 774-75.

Similarly, *Willis* involved a sales representative agreement that provided that the agreement could be terminated without cause and that commissions would be paid on certain post-termination sales. *Willis v. Champlain Cable Corp.*, 109 Wn.2d 747, 748-749 (1988). The plaintiff alleged that he was terminated in bad faith in order to avoid payment of commissions. *Id.* at 751.

Because the governing contract expressly foreclosed payment of all post-termination commissions, the Washington Supreme Court reviewed two possible bases for recovery, the procuring cause doctrine and section 454 of the Restatement (Second) of Agency.[2]  *Id.* at 754-55.  The court concluded that neither was applicable "when, as here, a written contract provides the manner by which termination can be effected as well as how commissions will be awarded when an employee or agent is terminated."  *Id.* at 755.

Finally, in *Hendry*, the Ninth Circuit, applying North Carolina law held that an at-will sales representative could not rely on a theory that he was terminated in bad faith in order recover post-termination commissions.  *Hendry*, 1992 U.S. App. LEXIS 21804, at *21-22.  The court explained that "our reading of the procuring cause rule is that it only implies a requirement of good faith in termination if the parties' contract <u>fails to specify</u> when the agent is entitled to receive commissions."  *Id.* at *22 n.13 (emphasis in original).

In light of decisions discussed above interpreting California law to preclude use of the procuring cause doctrine to circumvent written contractual conditions, the California Supreme Court would likely find the reasoning of these Ninth Circuit cases persuasive. The Court thus predicts that the California Supreme Court would hold that in the absence of unconscionability or illegality, where a contract unambiguously limits commissions upon termination, an at-will salesperson may not recover post-termination commissions, even if the employer terminated the salesperson in bad faith.

Applying this rule to the instant case, Plaintiff's bad faith cause of action fails as a matter of law.  Regardless of whether Plaintiff was hired for the purpose of winning Watkins' business in the form of a "long term multi-year purchase contract rather than just a single order or a few orders" (mem. at 5-6) or signed a "standard form contract used with 'ordinary' sales people" (mem. at 7), the express language of the contract

---

[2] This section provides:  "An agent to whom the principal has made a revocable offer of compensation if he accomplishes a specified result is entitled to the promised amount if the principal, in order to avoid payment of it, revokes the offer and thereafter the result is accomplished as the result of the agent's prior efforts."

provides for a cutoff of sales commissions thirty days after the effective date of termination. Plaintiff is an experienced salesman who should have understood that this clear and unambiguous provision could be applied to deprive him of commissions on orders that he procured that were placed after this cutoff date. Moreover, assuming the truth of Plaintiff's assertion that Plaintiff was hired to create a long-term business relationship with Watkins, Defendant would have good reason to establish a commission cut-off date. Unlike an order of a single unique item, the Watkins Agreement was a pricing and preferred vender agreement that did not obligate Watkins to make any purchases. *C.f. Willis*, Wn.2d at 751. Future orders would depend on the performance of Defendant in terms of the quality of its product, timeliness of delivery, and attitude and responsiveness of its customer service and sales representatives. In such circumstances, companies have to be concerned about having a finite point upon which commission payments are cutoff. Indeed, here, Plaintiff asserted at oral argument that he is indefinitely entitled to commission payments, so long as Watkins purchases products from Defendant. To reform the contract now to accomplish what Plaintiff wants would be improper because Defendant may never have agreed to such a commission provision. In the absence of illegality or unconscionability, it is not the Court's role to rewrite the contract retroactively to create a different bargain.

Cases relied upon by Plaintiff do not compel a different conclusion and are largely distinguishable on the grounds that they involve contracts that are silent as to whether a salesperson is entitled to commissions after termination, *see Poggi v. Tool Research & Eng'g Corp.*, 75 Wn.2d 356, 366-367 (1969); *Wise v. Reeve Electronics, Inc.*, 183 Cal. App. 2d 4, 7 (Cal. App. 2d Dist. 1960); expressly contain assurances that the employer will act in good faith in payment of post-termination commissions, *Watson v. Wood Dimension*, 209 Cal. App. 3d 1359, 1361 (Cal. App. 4th Dist. 1989); or provide for payment of commissions that are "<u>earned</u> . . . prior to termination." *See Fiberchem, Inc.*

*v. General Plastics Corp.*, 495 F.2d 737, 739 (9th Cir. 1974) (emphasis added)[3]. Two cases, however, bear closer consideration: *McCollum v. Xcare.net, Inc.*, 212 F. Supp. 2d 1142 (N.D. Cal. 2002) and *Stiglich v. Jani-King of Cal.*, 2008 Cal. App. Unpub. LEXIS 9390 (4th Dist. Oct. 28, 2008).

The Court addressed *McCollum* in the summary judgment order. For the reasons stated in that order, this case can be distinguished on its facts. Additionally, the *McCollum* court found contract provisions dealing with the allocation of post-termination commissions to be ambiguous as to whether they applied to a termination without cause. *McCollum*, 212 F. Supp. 2d at 1151. Thus, the *McCollum* court was not presented with the issue of whether allegations of bad faith termination can provide a basis for recovery when the express and unambiguous contractual provisions limit recovery of post-termination commissions.

In *Stiglich*, an at-will salesperson successfully argued that he was entitled to commissions on sales that he procured. The contract at issue provided that the salesperson was entitled to commissions only after completing conditions that related to the servicing of his sales accounts. *Stiglich*, 2008 Cal. App. Unpub. LEXIS 9390, at *3-6. The *Stiglich* court held that the doctrine of prevention of performance conferred the plaintiff with a right to commissions on sales he procured because his termination prevented him from performing his post-procurement contractual duties. *Id.* at *24-25.

The contract in *Stiglich* also contained a provision that required plaintiff to "relinquish all rights to commissions which have not been paid to date to Employee" upon termination. *Id.* at *27 n.5. It is unclear the extent to which this provision factored into the court's decision regarding prevention of performance, as the *Stiglich* court noted that it had not been referenced in the defendant's opening or reply brief and this provision is not discussed in the body of the first half of the opinion. *Id.*

---

[3] The *Fiberchem* court interpreted commissions "earned" to include commissions on sales upon which the plaintiff was the procuring cause. 495 F.2d at 739. Here, unlike in *Fiberchem*, there is no language in provisions governing when commission payments accrue that can be fairly read to allow for commissions on future orders that are procured by Plaintiff.

Regardless, *Stiglich* does not run counter to the rule derived from *Balzer/Wolf*, and other precedent discussed above, because the *Stiglich* court held that the contract provisions governing payment of post-termination commissions and commissions after fulfillment of post-procurement conditions are unconscionable. *Id.* at *28. For the reasons discussed in the summary judgment order, setting an end date on commission payments on all orders - including post-termination orders arguably procured by Plaintiff - is not substantively unconscionable. Thus, *Stiglich* is distinguishable from the instant case and is not contrary to the Court's holding that in the absence of illegality and unconscionability, express contractual provisions limiting payment of post-termination commissions foreclose Plaintiff from sustaining his implied covenant cause of action.

## C. Remaining Arguments

### i. Contract Interpretation

Plaintiff asserts that the Court should have addressed deposition testimony stating that Plaintiff was hired for the purpose of winning Watkins' business and that an agreement with Watkins would likely be in the form of a "long term multi-year purchase contract rather than just a single order or a few orders." Mem. at 5-6. Plaintiff contends that this evidence demonstrates that the Court's interpretation renders the contract "illusory or absurd." *Id.* at 6.

However, neither of these facts provides an alternative meaning for contractual language that requires commissions to be paid after acceptance of the order by Defendant and delivery. The Court held that Plaintiff must be paid for all orders by Watkins during Plaintiff's employment. Order at 9-10. Moreover, as discussed in the summary judgment order, an "order" can be a single purchase at a negotiated price or one placed pursuant to a long-term pricing agreement. Thus, the contract signed by Plaintiff covers an engagement to procure "orders" from Watkins. Whether or not Plaintiff

was hired to obtain a long-term contract with Watkins does nothing to alter this analysis.

ii. Forfeiture

Plaintiff asserts that the contractual provision cutting off commission payments thirty days after the effective day of termination acted as a forfeiture because once he brought Watkins to the table, "Plaintiff's job was done, 100%, he had earned his commission through four years of persistent work." Mem. at 8.

As noted in the summary judgment order, the Court concludes that a forfeiture did not take place here. Under the operative contract, Plaintiff had not earned any right to commissions on the Watkins Agreement because he was only entitled to commissions when orders were actually accepted and shipped. However, assuming that the post-termination cutoff date caused Plaintiff to forfeit commissions on all orders upon which he was a procuring cause, the Court's interpretation of the contract still would not change. "A contract is not to be construed to provide a forfeiture <u>unless no other interpretation is reasonably possible</u>." *Universal Sales Corp. v. California Press Mfg. Co.*, 20 Cal. 2d 751, 771 (1942) (emphasis added). Here, Section 15(b) of the contract unambiguously bars commission payments on all orders accepted more than thirty days after the effective day of the termination, and Sections 4 and 9(a) make clear that an order constitutes the final acts of a sale. Irrespective of Plaintiff's arguments that these provisions caused a forfeiture, the contract is not susceptible to any interpretation other than that Plaintiff is not entitled to commissions on orders placed pursuant to the Watkins agreement.

iii. Retroactive Changes To Compensation

Plaintiff asserts that under the Court's interpretation of the contract, Defendant has the right to retroactively change Plaintiff's commission after his work is complete and that

"[n]umerous cases consistently and uniformly hold that changes to commission and compensation terms cannot be done retroactively." Mem. at 12. However, unlike the cases cited by Plaintiff, the instant case does not involve retroactive adjustment of compensation (or an employment right) that had already vested pursuant to the governing contract. *C.f. Kempf v. Barrett Bus. Servs., Inc.*, 336 Fed. Appx. 658, 662 (9th Cir. 2009) (employee entitled to bonus where he "performed adequately under the terms of Barrett's bonus plan"); *McCaskey v. California State Automobile Assn.*, 189 Cal. App. 4th 947, 952-953, 963 (6th Dist. 2010) (triable issue of fact as to whether employer brought about sales agents' discharges by breaching a promise to permit senior sales agents to continue in its employ under relaxed sales quotas, which "gave rise to a contractual duty toward plaintiffs"). Here, there were no orders placed pursuant to the Watkins agreement during Plaintiff's employment. Thus, Plaintiff had not accrued any rights to compensation under the contract that could have been retroactively adjusted. Moreover, contractual language expressly prevents Defendant from taking action to retroactively change commission rates, as Section 9(a) provides that any changes to commission rates "will only be applicable to orders which are mailed or delivered to Cutler-Hammer 30 days after notice of such change in rate is given to the Representative." The Court has not been presented with any facts showing that Defendant directly violated this provision.

iv. <u>Wholesale Sales Representative Contractual Relations Act</u>

In the Court's summary judgment order, the Court held that Defendant was not entitled to summary judgment on a claim that Defendant violated Cal. Civ. Code § 1738.15[4] by not paying Plaintiff a commission on the field test order. The court also held

---

[4] The Court inadvertently cited to the California Labor Code sections 1738.15 and 1738.13 in the summary judgment order. The proper citations are to the California Civil Code. Additionally, the next to last sentence of the conclusion of the summary judgment order twice references section 1738.15. The second reference should be to 1738.13.

that Defendant was not entitled to summary judgment on Plaintiff's Section 1738.13 claim because a contractual provision providing Defendant with sole right to apportion commissions on sales made with the cooperation of a sales representative and a distributor failed to set forth the rate or method of computation of commission.

At oral argument, Plaintiff took the position that a violation of Section 1738.13 would entitle him to commissions on orders made pursuant to the Watkins Agreement. The Court disagrees.  Plaintiff was denied commissions on Watkins Agreement orders because of the contract provision cutting off commissions thirty days after the effective day of termination, not because of Defendant's purported right to apportion commissions. The field test order was the only order placed prior to the expiration of this tail period, and thus, the provision governing the apportionment of commissions played no role in the denial of commissions for all other orders.  Accordingly, Plaintiff is entitled to damages under section 1738.13 only for the field test order and not for any orders placed pursuant to the Watkins Agreement.

### III.  CONCLUSION

For the reasons discussed above, Plaintiffs' motion for reconsideration is **DENIED**. After a *de novo* review, the Court **REAFFIRMS** its summary judgment order with the modification of some of the supporting reasoning, as set forth above.

**IT IS SO ORDERED.**

DATED:  July 25, 2011

Honorable Barry Ted Moskowitz
United States District Judge